IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| HIGHLAND CONSTRUCTION ) | |
| MANAGEMENT SERVICES, LP ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| HIGHLAND CONSTRUCTION ) | |
| MANAGEMENT SERVICES, LP, et al., ) | 1:16-cv-1503 (LMB/IDD) |
| ) | |
| Appellants, ) | 11-1413-RGM (Chapter 11) |
| ) | |
| v. ) | Adv. Proc. No. 15-01030-RGM |
| ) | |
| WELLS FARGO F/B/O ) | |
| JEROME GUYANT IRA, ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM OPINION

Before the Court is Highland Construction Management Services and Joseph Lee Bane, Jr.'s (collectively "appellants") appeal from a bankruptcy court order granting summary judgment in favor of Wells Fargo Bank NA f/b/o Jerome Guyant IRA ("appellee") [Dkt. No. 1] in an adversary proceeding contesting the appellee's claim for $1,396,657.52 pursuant to a judgment order from a Virginia state court. The bankruptcy court determined that the state court judgment regarding the debt owed by appellants was res judicata and therefore that appellants' could not challenge the nature and scope of that obligation. For the reasons that follow, the bankruptcy court's order will be affirmed.

I. BACKGROUND

Highland Construction Management Services ("Highland") is a limited partnership which owns interests in entities that invest in and develop real estate. Appellants Br. at 8. Joseph Lee

Bane, Jr. ("Bane") is a trustee for the irrevocable trust that serves as the general partner of Highland. Id. Jerome Guyant ("Mr. Guyant") was a member of most of the limited liability companies in which Highland held an interest. Id. The Guyant Individual Retirement Account ("the Guyant IRA"), of which Wells Fargo is the trustee, served as Highland's principal lender before Highland's bankruptcy. Id.[1] Based on the terms of the loans, the Guyant IRA was a lender of "last resort," charging loan origination fees of twenty percent and interest of twenty percent. JA 353.

On December 22, 2005, Highland executed a promissory note for $650,000 in favor of the Guyant IRA to secure a revolving credit line. JA 165. That note was modified by an allonge on October 13, 2006, which increased the amount of credit to $850,000. JA 166. A second allonge, effective as of July 1, 2007, stated that the outstanding principal balance on the note was $850,000 and the outstanding interest was $177,750. JA 173-74. The second allonge extended the due date for repayment of the loan and made changes to the interest rates and other terms. JA 079. The third allonge, executed in November 2008, increased the amount of credit to $1.4 million and extended the payment date for all unpaid principal and interest until December 1, 2008. JA 080, 180-81. In the third allonge, the parties agreed that, as of September 30, 2008, the outstanding principal balance was $981,822.08, which included $81,822.08 in unpaid interest and an additional loan fee of $50,000. JA 181. Highland defaulted on the note when it failed to pay the principal and interest due by December 1, 2008. JA 080. At that time, the principal amount due on the loan was $1,082,000. Id. The debt owed by Highland to the Guyant IRA has

---

[1] In their complaint, the appellants acknowledge that, "[t]here is an identity of interest between the [Guyant] IRA and [Mr.] Guyant." JA 002.

been the subject of two state court cases and three prior disputes before the bankruptcy court. The history of these proceedings is summarized below.

Efforts to collect the debt began in the Circuit Court for Loudoun County on March 24, 2010 with the filing of <u>Wells Fargo Bank, N.A. f/b/o Jerome Guyant IRA v. Highland Construction Management Services, LP</u>, in which the Guyant IRA sued Highland, and Bane as guarantor, for $1,082,000 in outstanding principal and $257,595.56 in interest, as well as for a declaratory judgment as to the perfected status of the Guyant IRA's security interest in the debt. JA 062. Following a bench trial, Judge James H. Chamblin awarded the Guyant IRA a $1,082,000 judgment against Highland and Bane, along with interest, attorney's fees, and costs. JA 035-37. The Judgment Order also declared that the Guyant IRA had a perfected security interest in certain assets of Highland to secure payment of the judgment. <u>Id.</u>

In rendering his decision, Judge Chamblin walked through the lending history between appellants, Mr. Guyant, and the Guyant IRA, from the original note to the default in 2008. JA 160-92. A focal point of debate between the parties was the significance of a December 2006 transfer of interest in Ashbury Hillsides, LLC ("Ashbury"), which owned real estate near Hillsboro, Virginia. JA 0003. As of December 2006, Highland held a 47% interest in Ashbury. Appellants Br. at 9. On December 13, 2006, Highland conveyed a 42% interest to Mr. Guyant, who wanted to acquire tax credits held by Ashbury. JA 200.[2] According to the Assignment of Interest, the assignment was based on a purchase agreement between Highland and Mr. Guyant and the first installment of the purchase agreement was a $400,000 wire transfer from Mr. Guyant to Highland on December 13, 2006. <u>Id.</u> No additional consideration is identified in the

---

[2] Highland retained a 5% interest in Ashbury. Appellants Br. at 9. Mr. Guyant had a preexisting interest of 3% and the transfer increased his total ownership interest to 45%. JA 172, 176.

3

assignment document and no written purchase agreement appears to have been created; instead the parties formed an oral agreement. JA 333.

Based on the evidence presented at trial, Judge Chamblin found that the terms of the oral agreement were as follows: Highland agreed to transfer to Mr. Guyant a 42% interest, along with the associated tax benefits. JA 170-72. In exchange, the parties agreed that Mr. Guyant would lend Highland $400,000 and waive the $80,000 origination fee for that loan. Id. In addition, Mr. Guyant would apply any proceeds realized from the 42% interest in Ashbury first to repay Mr. Guyant for the $400,000 loan to Highland and then to reduce Highland's debt to the Guyant IRA. Id.[3] In other words, the beneficial interest from the 42% ownership stake in Ashbury remained with Highland. JA 316. Judge Chamblin concluded that Mr. Guyant performed his obligations by crediting proceeds received from Ashbury's sale of property ($176,400 on April 9, 2007) and the sale of tax credits ($470,400 on October 7, 2007) to Highland's $400,000 debt to him and then to the Guyant IRA. JA 172, 175-76. Both of these credits were incorporated into Judge Chamblin's calculation regarding the outstanding debt. JA 176-77.

In their affirmative defenses, Highland and Bane argued that "Highland [was] entitled to a setoff and/or recoupment in connection with Plaintiff's purported purchase of 42% interest in Ashbury [] in an amount to be determined." JA 136. Highland characterized the $400,000 payment not as a loan but as a down payment for the 42% interest. JA 169-70. Consistent with its affirmative defense, Highland argued that all the proceeds from these two transactions (the sale

---

[3] As explained by the bankruptcy court, Judge Chamblin essentially concluded that there was no fixed price for the Ashbury investment or for the 42% interest transferred to Mr. Guyant. JA 364. Instead, the parties agreed that "Mr. Guyant would pay the actual value obtained when Ashbury's assets were sold," by crediting the liquidation proceeds to Highland's debts. Id. Under this understanding of the agreement, the time for performance was the time "when the distribution was to made," i.e. the time when the asset was sold. JA 367.

of land and sale of tax credits) should have been applied against Highland's debt to the Guyant IRA. JA 143-44. The court rejected these contentions, finding that the Guyant IRA's explanation was consistent with the transaction history, and in its October 5, 2010 order entered a judgment against Highland and Bane, jointly and severally, for $1,082,000 in principal, $82,435.13 in unpaid interest, $45,068.06 in attorney's fees and costs, and $5,000 in expert witness fees. JA 035-37. On February 28, 2011, Highland filed a voluntary petition for Chapter 11 bankruptcy relief in the bankruptcy court for the Eastern District of Virginia, Alexandria Division. See In re Highland Construction Management Services, LP, Case No. 11-11413.

While the first state case was pending, on May 10, 2010, Highland filed its own civil action against Mr. Guyant in the same court, Highland Construction Management Services, LP v. Jerome Guyant,[4] asserting in Count I that Mr. Guyant had breached the agreement to buy the 42% Ashbury interest for $1,737,345.00 ($1.7 million was the appraised value of the Ashbury property) and that the $400,000 from Mr. Guyant to Highland was a down payment so Mr. Guyant still owed Highland $1,337,345. JA 195-96. Alternatively, Count II asserted Quantum Meruit/Unjust Enrichment under the theory that Mr. Guyant was unjustly enriched by receiving extensive tax deductions available to him as a result of the transaction. According to Highland, the value of the interest conveyed was $2,225,217 which, after crediting Mr. Guyant for the $400,000 wire transfer, reduced Mr. Guyant's debt to Highland to $1,825,217. JA 196-97. Highland removed the action to the bankruptcy court, but it was subsequently remanded back to the Circuit Court. Appellee Br. at 8. In his defense in that proceeding, Mr. Guyant asserted

---

[4] This state case was brought against Mr. Guyant in his individual capacity, not the Guyant IRA; however, appellants conceded in the bankruptcy court that there was identity between Mr. Guyant and the Guyant IRA, and the bankruptcy court agreed with this conclusion. JA 356, 358.

5

collateral estoppel and res judicata, citing the prior state case's holding regarding the terms of the Ashbury transaction. JA 205.

Judge Chamblin presided over the second state court case in which he reached the same conclusion as he had in the first case: that the $400,000 represented a loan from Mr. Guyant to Highland, who received the benefit of the $80,000 loan fee being waived, and, in exchange, Mr. Guyant received the benefit of the tax deductions that were of no value to Highland and agreed to apply the proceeds from the 42% interest in Ashbury first to reduce the $400,000 loan from Mr. Guyant and then to reduce Highland's debt to the Guyant IRA. JA 209. As to the breach of contract claim alleged in Count I, the court found that Highland was unable to carry its burden of proving that the terms of the agreement were as it alleged. JA 208. With respect to Count II, the court found that there was adequate consideration and quantum meruit did not apply. JA 209. Highland filed a Motion for Reconsideration and a Motion for a New Trial. Following a hearing, both motions were denied. JA 214-27.[5]

During the course of the second litigation, Highland presented evidence and argument regarding a quasi-estoppel theory as to the tax deductions. Id. Judge Chamblin stated that the tax issues were "very interesting" but concluded that they were not dispositive and instead focused on the terms of the transfer of interest in Ashbury. JA 207-09. Although Judge Chamblin asked Highland about the sources of the quasi-estoppel cases cited in its briefs, he never stated that he

---

[5] During the hearing, Judge Chamblin observed that there was an open issue about whether Highland was entitled to receive distributions based on the 42% interest conveyed to Mr. Guyant after Highland's debts to the Guyant IRA were paid in full. JA 221. Appellants have attempted to resurrect that issue in the current adversary proceeding by arguing that it opens the door to relitigating determinations of alleged credits. JA 001-13. Both parties agree that no payments have been made on the judgment, JA 342-43; therefore, what might happen after the debt to the Guyant IRA is paid in full is immaterial to these proceedings. Moreover, the Guyant IRA represented to the bankruptcy court that if the judgment order were ever fully paid, any additional profits from the 42% interest in Ashbury would go to Highland. JA 324.

would not apply the doctrine because the Virginia Supreme Court had yet to rule on it, id.; instead he concluded that quasi-estoppel was not relevant to the case, JA 223-24.[6] Highland appealed Judge Chamblin's decision to the Supreme Court of Virginia, which found that there was no reversible error and refused the petition for appeal. JA 270

After Highland filed its Chapter 11 petition, Wells Fargo timely filed a Proof of Claim on behalf of the Guyant IRA, citing the Virginia state court judgment. JA 032-33. Since that filing, the parties have litigated three disputes in the bankruptcy court about the Guyant IRA's claim. The first dispute, which arose as an objection, not in an adversary proceeding, dealt with whether the Guyant IRA's claim was secured or, as Highland argued, an unsecured debt subservient to the debtor's status as a judicial lien creditor. The bankruptcy court rejected Highland's argument and was affirmed by both this court, JA 272-74, and the Fourth Circuit, JA 275-76. In the second dispute, which arose in the context of an adversary proceeding, Highland attacked the pre-judgment attachment of proceeds from an investment that served as a security for its debt to the Guyant IRA. See Highland Construction Management Services, LP v. Wells Fargo Bank, NA, f/b/o Jerome Guyant, IRA, Adv. Proc. No. 13-1055. Highland ultimately dismissed that proceeding with prejudice. JA 401. In the third dispute, also an adversary proceeding, Highland challenged the Guyant IRA's status as a secured creditor with respect to the note, asserting that financing statement did not create a valid security interest. See Highland Construction Management Services, LP v. Wells Fargo Bank, NA, f/b/o Jerome Guyant, IRA, Adv. Proc. No.

---

[6] Judge Chamblin reiterated this during the hearing on the motion for reconsideration: "This is not a matter of me recognizing whether Virginia recognizes a quasi-estoppel doctrine. That's not what this is about. And this is not about an unjust enrichment. It's about what was the agreement between the parties, between Highland and Mr. Guyant." JA 021. Similarly, in the earlier state court case, Judge Chamblin also found that quasi-estoppel was inapplicable, stating, "I don't think this is an estoppel case." JA 187-88.

13-1289. The bankruptcy court entered judgment against Highland, finding that the issue was <u>res judicata</u> because Highland had the opportunity to litigate that issue in the first state court case. JA 438.

The instant adversary proceeding arises out of a appellants' complaint filed on February 2, 2015, in which they sought in Count I to recharacterize the Guyant IRA's $1,396,657.52 claim "as equity obtained by Mr. Guyant when he received [42%] membership interest in Ashbury." JA 009. Count II sought equitable subordination of the debt to claims of unsecured creditors and Count III sought determination of an alleged credit due to Highland. JA 009-13. The Guyant IRA filed a motion for summary judgment, asserting that all three claims were barred by <u>res judicata</u> and collateral estoppel. JA 059-76. In an order dated October 25, 2016, the bankruptcy court granted the Guyant IRA's Motion for Summary Judgment with respect to Counts I and III, and denied the Motion as to Count II. JA 304-06.

With respect to Count I, the bankruptcy court concluded that appellants were impermissibly "splitting causes of action" to bring their recharacterization claim, which was barred by <u>res judicata</u>. JA 370. As the court explained, in the context of bankruptcy, recharacterization is relevant to determining priority, and, more fundamentally, it is an argument that debt is in fact equity. JA 370-71. Because the state court already determined the nature of the Ashbury transaction, the bankruptcy court held that appellants' recharacterization claim was barred by <u>res judicata</u>. These issues were <u>res judicata</u> as a result of the first state decision because there was "identity of interest between [Mr.] Guyant and the [Guyant] IRA." JA 370. The bankruptcy court also found that because Judge Chamblin made the same finding in the second state case where Mr. Guyant was included as a party, it was <u>res judicata</u> twice over. <u>Id.</u>

8

Alternatively, the court found that the factual elements of appellants' recharacterization claim were barred by collateral estoppel. JA 371.

As to Count III's request for a determination of how to apply credits, the bankruptcy court concluded that the state court had determined how to apply pre-judgment credits. JA 372. Although determination of post-judgment credits could be resolved by the bankruptcy court, the appellants conceded that Count III did not address post-judgment credits. Id. Instead they disputed credits that the state court had already addressed; thus, the bankruptcy court found that res judicata applied. Id.

The bankruptcy court declined to find that Count II, the equitable subordination claim, was barred by res judicata as a result of the state court proceedings because adjudicating subordination requires assessing the interests of a group of creditors and in both state court proceedings there was only one creditor—Mr. Guyant or the Guyant IRA. JA 373. In addition, the bankruptcy court found that none of the previous bankruptcy proceedings between the parties created res judicata as to these issues. JA 374. As the court explained, the first matter arose from an objection, not an adversary proceeding, which made it a weaker case for res judicata and the critical issue was the validity of the lien, which meant that subordination was not necessarily an issue that needed to be raised in that context. JA 374-75. In the second bankruptcy matter, which was adversarial, the issue was preference, which the court concluded involved a different claim. Id. Although the third proceeding addressed the validity of the lien, the court stated that it was not necessary to raise a subordination issue in that context. JA 376. In the absence of res judicata, the bankruptcy court ruled that Count II could proceed to trial. JA 377. The parties later agreed to dismiss Count II without prejudice, conditioning refiling upon a reversal of the grant of summary judgment as to Count I. JA 443-44.

## II. DISCUSSION

Appellants have appealed the bankruptcy court's order granting summary judgment on Counts I and III on the basis of res judicata.

### A. Standard of Review

On appeal, a bankruptcy court's "[f]indings of fact are . . . reviewed for clear error, and conclusions of law de novo." Riley v. Robey, 25 F. App'x 149, 152 (4th Cir. 2002). The conclusion that a claim is barred by res judicata is a legal one, thus review is de novo. Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A., 816 F.3d 273, 276 (4th Cir. 2016); see also Marvin v. Marvin, No. CIV.A. 3:08CV695, 2009 WL 152314, at *2 (E.D. Va. Jan. 21, 2009), aff'd sub nom. In re Marvin, 332 F. App'x 9 (4th Cir. 2009).

### B. Analysis

Although the appellants raised three questions in their opening brief, there is effectively only one dispute: whether res judicata applies.[7] In the Fourth Circuit, "[t]he application of res judicata turns on the existence of three factors: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Clodfelter v. Republic of Sudan, 720 F.3d 199, 210 (4th Cir. 2013) (internal quotation marks omitted). The Fourth Circuit's test for identity as to the cause of action "asks only if a claim made in the second action involves a right arising out of the

---

[7] "The doctrine of res judicata encompasses two concepts: 1) claim preclusion and 2) issue preclusion, or collateral estoppel. The rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment in the prior action bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented. However, issue preclusion is more narrowly drawn and applies when the later litigation arises from a different cause of action between the same parties." Orca Yachts, L.L.C. v. Mollicam, Inc., 287 F.3d 316, 318 (4th Cir. 2002) (internal quotation marks omitted).

10

same transaction or series of connected transactions that gave rise to the claims in the first action." Harnett v. Billman, 800 F.2d 1308, 1314 (4th Cir. 1986). This test involves measuring "the scope of [the] transaction or series of connected transactions by considering pragmatic factors such as common origin and relation, as well as whether the acts giving rise to the claim would be considered as part of the same unit by the parties in their business capacities." Id. (internal quotation marks omitted). Crucially, "claims may arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief." Id. So robust are the effects of res judiciata that the "consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).

Appellants do not dispute the finality of the state court judgments and they concede identity of interests among the parties. JA 002. Indeed, appellants have gone so far as to argue that res judicata applies with respect to some of the elements of their recharacterization claim. See JA 284 ("The State court decision is res judicata on [the issue of the maturity date] and supports Highland's claim."). Therefore, the dispute focuses on the second requirement, whether there is identity as to the cause of action.

Appellants argue that the Virginia court lacked subject matter jurisdiction over their recharacterization claim, which they contend is a form of relief unique to bankruptcy proceedings. This is incorrect. As numerous courts have acknowledged, "there is no specific provision of the Bankruptcy Code that allows courts to recharacterize claims." In re AutoStyle Plastics, Inc., 269 F.3d 726, 748 (6th Cir. 2001). Rather, "[b]ankruptcy courts that have applied a recharacterization analysis have concluded that their power to do so stems from the authority

vested in the bankruptcy courts to use their equitable powers" pursuant to 11 U.SC. § 105 "which states that bankruptcy judges have the authority to 'issue any order, process or judgment that is necessary or appropriate to carry out the provisions' of the Code." Id. Because all courts have inherent equitable authority consistent with the scope of their jurisdiction, Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946), there is no reason to believe recharacterization is unique to bankruptcy courts. In keeping with this reasoning, multiple state courts, including Massachusetts and Wisconsin, have provided "a common law cause of action for debt recharacterization." See Straightshot Commc'ns Inc. v. Telekenex, Inc., No. C10-268Z, 2010 WL 4793538, at *2 (W.D. Wash. Nov. 19, 2010).

Contrary to appellants' contention, res judicata applies to their effort to recharacterize the debt notwithstanding the fact that a specific cause of action called "recharacterization" has not been explicitly recognized in Virginia.[8] The claims brought in the two state court proceedings required the state court to determine whether the terms of the Ashbury transaction supported the Guyant IRA's claim that it was owed $1,082,000 in unpaid principal or appellants' contention that the $400,000 was a down payment on a fixed purchase price. Nothing prevented the appellants from arguing that the Guyant IRA's claim represented a capital contribution. Recharacterization is merely the same inquiry under a different name, for it simply asks a bankruptcy court to determine "whether a particular obligation is debt or equity." In re: Dornier Aviation (N. Am.), Inc., 453 F.3d 225, 231 (4th Cir. 2006). More simply, as the bankruptcy court aptly explained, "one defense to saying hey, you owe me a million dollars is to say no, when you

---

[8] Appellants' focus on the bankruptcy court's prediction that the Virginia Supreme Court would adopt recharacterization if presented with the question is a red herring. The prediction was pure speculation and was irrelevant to the court's conclusion that res judicata applied notwithstanding the fact that recharacterization is not formally recognized as a cause of action under Virginia law.

look at the transaction as a whole, you made a contribution to the capital of the corporation, and it is equity in the corporation. I don't owe you anything." JA 371. Indeed, Virginia courts have accepted this very argument, concluding that what one party described as debt was actually a capital contribution. See Bosserman v. Bosserman, 384 S.E.2d 104, 110 (Va. Ct. App. 1989) ("[T]he evidence was sufficient to support the finding of the trial court that the alleged debt was, in fact, capitalization of the corporation.").[9] Because the appellants' recharacterization argument presents a fundamentally factual question, permitting appellants to bring a recharacterization claim in bankruptcy court after a state court has already determined the nature of the obligation would exalt form over substance. The imperative of res judicata does not permit such chicanery.

To the extent that appellants suggest that they could not have raised a novel cause of action in the state proceedings,[10] that contention is belied by their own conduct: appellants

---

[9] In their briefs, appellants ask the Court to certify the following question to the Supreme Court of Virginia: "Does a cause of action exist, pursuant to Virginia common law, to recharacterize a creditor's claim, from debt to equity?" Appellants Br. at 19. The Court declines this invitation. "Certification is, by its very nature, discretionary," Gariety v. Vorono, 261 F. App'x 456, 462 (4th Cir. 2008), and "[c]onsiderations of comity" dictate that courts "ought not to request [a state's highest tribunal] to answer a question of law unless and until it appears that the answer is dispositive of the federal litigation or is a necessary and inescapable ruling in the course of the litigation." Boyter v. C. I. R., 668 F.2d 1382, 1385 (4th Cir. 1981). Here, the question posed by appellants is neither dispositive nor necessary because Virginia state courts can and have determined that an obligation is equity rather than debt. See supra. Further, a future decision by the Supreme Court of Virginia would have no bearing on whether res judicata applies to state court proceedings that were completed in 2010 and 2013, respectively.

[10] Appellants argue that their claim that the alleged debt was actually equity could not have been raised in state court until after the factual findings made by Judge Chamblin in the second state court case "established the facts necessary to recharacterize a claim, pursuant to Dornier and Section 105 of the Bankruptcy Code." Appellants Br. at 16. Appellants recognition that the state court made factual findings relevant to recharacterization supports rather than undermines the conclusion that the state court was well situated to determine whether the Guyant IRA's claim represented debt or equity. Moreover, to the extent that appellants argue that they could not have raised a recharacterization claim in state court because the factual elements were unknown to them before the state court rendered its decision, they are mistaken. The state court made the factual findings necessary to substantiate its conclusion and, if presented with a

13

advanced a novel legal theory when they asked Judge Chamblin to adopt quasi-estoppel doctrine, relying only on federal court cases and acknowledging that quasi-estoppel was not a recognized theory under Virginia law. JA 207. Because they could have explicitly raised their recharacterization claim in state court, and certainly implicitly raised it, appellants cannot rely on the untested nature of this legal theory in Virginia to circumvent res judicata.[11] For all these reasons, the bankruptcy court's decision to dismiss Count I as barred by res judicata will be affirmed.

Summary judgment was also properly granted as to Count III based on res judicata.[12] As the bankruptcy court explained, appellants are entitled to ask for credits in bankruptcy court, but those credits would have to be based on post-judgment payments. The amount due to the Guyant IRA was established by the state court judgment and all claims about pre-judgment credits are now res judicata. Based on its colloquy with the parties, the bankruptcy court understood "that there [were] no post-petition payments." JA 372. Rather, what the parties were talking about were "credits that Judge Chamblin has already addressed and incorporated into the balance due, and taken into account in a manner in which the transaction is determined." Id. On appeal, appellants have made no attempt to demonstrate that the bankruptcy court's understanding was inaccurate.

---

recharacterization claim at the outset, could have made any other necessary factual findings. Finally, the eleven factor test enumerated by the Fourth Circuit in Dornier is not controlling in Virginia, so there is no basis for arguing that these findings were necessary to support a claim for recharacterization in Virginia state court.

[11] The parties extensively debated whether the current claims are res judicata as a result of the prior bankruptcy proceedings. The Court need not engage with this issue because res judicata is clear with respect to the state court proceedings.

[12] Appellants inaccurately state that the bankruptcy court denied Count III without explanation. Appellants Br. at 6-7. To the contrary, the court's discussion spans a full transcript page. JA 371-72.

Finally, appellants' contention that res judicata does not apply to Count III because Judge Chamblin expressly permitted claim splitting misrepresents the state court's holding. Claim splitting "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 329 F. Supp. 2d 574, 579 (D. Md. 2004). "[A]s with the traditional res judicata analysis, the second suit will be barred if the claim involves the same parties or their privies and 'arises out of the same transaction or series of transactions' as the first claim." Id. But, "[w]hile claim splitting and the principles of res judicata prohibit a [p]laintiff from prosecuting its case piecemeal, a party is not barred from bringing in a subsequent action those claims that could not have been included in the original suit—even if they are related, or arise out of, the previously filed claim." Id. (internal citations omitted).

In the second state court case, Judge Chamblin did not authorize claim splitting regarding the determination of credits due. Instead he concluded that appellants' breach of contract claim was not ripe because no breach had yet occurred. JA 221. He added that, were a breach to occur, appellants would be able to bring a new cause of action arising out of a related but distinct set of facts. That said, no facts supporting a new cause of action for breach of contract were presented to the bankruptcy court when the Motion for Summary Judgment was filed.[13] Quite the opposite, appellants conceded that no post-judgment payments had been made and their argument was about the characterization of pre-judgment credits. JA 272. Based on these representations, the

---

[13] Appellants now seek to argue that there is a new credit at issue and point to a November 3, 2016 bankruptcy court order approving an agreement for Highland to purchase the remaining Ashbury real property. Appellants Br. at 25. That order is not included in the joint appendix, the supplemental appendix, or the bankruptcy court's docket sheet, which extends through November 19, 2016. In any event, this appeal, which was filed on November 2, 2016, challenges the bankruptcy court's summary judgment order entered on October 25, 2016. Therefore, any subsequent orders are not properly raised in this appeal.

15

bankruptcy court appropriately granted summary judgment as to Count III because it was barred by res judicata.

### III. CONCLUSION

Appellants had two opportunities in state court to have the debt they owe to the Guyant IRA characterized as equity. Having twice failed to raise their recharacterization claim, appellants are not entitled to raise it in the bankruptcy court, nor are they entitled to relitigate pre-judgment credits. Accordingly, it was not error for the bankruptcy court to grant summary judgment on Counts I and III, and for these reasons the decision below will be AFFIRMED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 20 day of March, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge